CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/10/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DONGGUAN JIANQUN COMPANY, LTD., <br> *Plaintiff,* <br> v. <br><br> CONSOLIDATED SHOE COMPANY, INC., *et al.*, <br> *Defendants.* | CASE NO. 6:21-cv-00048 <br><br> MEMORANDUM OPINION |

Before the Court is Defendants' motion for reconsideration of the Court's order on motion for entry of default, order on motion for extension of time to answer, and motion to vacate default judgment. Dkt. 48. The Court previously granted default judgment and denied Defendants' motion for extension of time to file an answer. Dkt. 47. Defendants move the Court to vacate its default judgment order pursuant to Federal Rules of Procedure 55(c) and 60(b). The Court now finds that the factors for vacating default judgment weigh in favor of Defendants. The Court will grant Defendant's motion for reconsideration and vacate default judgment.

## Background

The following facts are alleged in Plaintiff's Complaint. Between September 2020 and May 2021, Plaintiff and Defendants "entered into a series of contracts for the manufacture and delivery of women's shoes." Dkt. 1 ¶ 1. Plaintiff Dongguan Jianqun Shoes Company, Ltd., is a foreign business entity formed under the laws of the People's Republic of China. *Id.* ¶ 6. Plaintiff's principal place of business is in Guangdong Province in China. *Id.* Plaintiff "is a

1

business entity that manufactures and supplies shoes for retail sale in numerous countries including the United States of America." *Id.* ¶ 7.

Defendant Consolidated Shoe Company, Inc., ("CSC") a domestic corporation, is incorporated and registered to conduct business in Virginia and has its principal place of business in Lynchburg, Virginia. *Id.* ¶ 7. Its registered agent is located in Lynchburg. *Id.* ¶ 10. Plaintiff contends that Defendant CSC uses a variety of names when doing business, "including Consolidated Shoe Company, Ltd., Hong Kong, Trade Winds Importing Company, Trade Winds Importing, LLC and New Century Footwear Products, Co., Limited." *Id.* ¶ 11. Plaintiff avers that "Consolidated Shoe Company, Inc., Consolidated Shoe Company, Ltd., Hong Kong, Trade Winds Imports, LLC., and New Century Footwear Products, Co., Limited, are the same company, each being the alter ego of the other or are affiliated businesses with all business decisions being coordinated and controlled by Consolidated Shoe Company, Inc." *Id.* ¶ 23.

"Defendant Consolidated Shoe Company, Ltd., Hong Kong[] is a foreign business entity formed under the laws of the People's Republic of China," with its principal place of business in Hong Kong. *Id.* ¶ 12. It is a subsidiary of Consolidated Shoe Company, Inc., and the United States Head Office located in Lynchburg, Virginia controls all its activities. *Id.* ¶ 13.

Defendant Trade Winds Importing, LLC ("TWI") "is a domestic limited liability company registered to conduct business in the Commonwealth of Virginia," and its principal place of business is in Lynchburg, Virginia. *Id.* ¶ 16. Its registered agent is located in Lynchburg, Virginia. *Id.* ¶ 17. Plaintiff asserts that Defendant Trade Winds Importing, LLC "does business under a variety of names, including Consolidated Shoe Company, Inc., Consolidated Shoe Company, Ltd., Hong Kong, Trade Winds Importing Company and New Century Footwear Products, Co., Limited." *Id.* ¶ 18.

Plaintiff accepted seventy-six separate purchase orders submitted by Defendants between September of 2020 and May of 2021. *Id.* ¶ 32. However, Plaintiff alleges that "Defendants have failed to pay Plaintiff for goods and services performed on seventy-six (76) purchase orders." *Id.* ¶ 37. Plaintiff further alleges that each purchase order it performed in September, October, November, and December 2020, as well as January, February, March, April, and May 2021, "identifies Trade Winds Importing, LLC . . . as the original source of the purchase order." *Id.* ¶¶ 40, 42, 44, 46, 48, 50, 52.

## Applicable Law

"[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citation omitted) (internal quotation marks omitted). A court may alter or amend the judgment under Rule 59(e) if the movant shows "(1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403, 407 (4th Cir. 2010). Rule 60(b) permits a party to seek relief "from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). A party seeking relief under Rule 60(b) must make a threshold showing of "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Dowell v. State Farm Fire & Cas. Auto Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993). After that threshold showing is met, the movant must satisfy one of the six specific sections in Rule 60(b), which are (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud or misconduct of an adverse party; (4) a void judgment; (5) a satisfied judgment; or (6) any other reason justifying relief. Fed. R. Civ. P.

60(b). The party seeking relief pursuant to Rule 60(b) must "clearly establish the grounds therefor." *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992). Rule 60(b) is an "extraordinary remedy" that "is only to be granted in exceptional circumstances." *LHF Prods., Inc. v. Dash Food Mart*, No. 5:16-cv-27, 2019 WL 1290899, at *2 (W.D. Va. Mar. 20, 2019) (quoting *In re A.H. Robins Co.*, No. 98-1893, 1998 WL 904717, at *1 (4th Cir. Dec. 29, 1998) (unpublished)). Subsection six of Rule 60(b) is a catch-all clause, but it "may be invoked in only extraordinary circumstances when the reason from relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)–(5)." *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (internal quotation marks omitted).

Rule 55(c) provides, in relevant part, that "[t]he court may set aside an entry of default for good cause." In so ruling, a district court should consider "[1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic." *Mavila v. Absolute Collection Service, Inc.*, 539 F. App'x 202, 204-05 (4th Cir. 2013). The Fourth Circuit has long held that "Rule 55(c) motions must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Colleton Prep. Acad., Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 421 (4th Cir. 2010) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)). "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Tolson*, 411 F.2d at 130.

**Discussion**

1. <u>Whether Movants Have a Meritorious Defense</u>

4

"In the context of a defendant's motion to set aside the entry of default or default judgment, a meritorious defense will be established if the defendant proffers evidence that, if believed, would permit the court to find for the prevailing party." *Belvac Prod. Mach., Inc. v. Standard Indus. Prods. Co.*, No. 6:06-cv-00034, 2007 WL 1189644, at *2 (W.D. Va. Apr. 23, 2007). The defendant bears a minimal burden. *Id.* "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1998). If the defendant offers a "bare allegation of a meritorious defense," the trial court, "in its discretion," could "requir[e] disclosure of facts to support such a conclusory assertion." *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 252 (4th Cir. 1967). And while "[t]he burden for proffering a meritorious defense is not onerous, [] the defenses must 'allege[] specific facts beyond simple denials of conclusionary statements.'" *Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Cor.*, 812 F. Supp. 2d 710, 724 (E.D. Va. 2011) (internal reference omitted); *see Consol. Masonry & Fireproofing, Inc.*, 383 F.2d at 251–52 (discussing that a defendant failed to support its meritorious defense when it "did not more than allege in conclusory fashion that it had a meritorious defense").

Here, Defendants offer the defense that "CSC and TWI's Motion to Dismiss and Opposition to Motion for Default Judgment point out that the defendants are separate legal entities, thereby contradicting the allegation that each defendant is the alter ego of the others." Dkt. 48 at 6. Further, "[i]n CSC and TWI's Opposition to Motion for Default Judgment, they point out that neither were parties to the commitments and neither communicated directly with the Plaintiff." *Id.* (citing Dkt. 41 ¶ 8). And "[i]n their Answer, CSC and TWI specifically aver and deny that any of

the defendants are the alter ego of the others." *Id.* (citing Dkt. 46 ¶ 26).[1] Further, Defendants include an excerpt of deposition testimony from CSC's Chief Operating Officer William Carrington as an exhibit accompanying its motion for reconsideration, in support of these denials and averments. Dkt. 48 (Ex. A).

Under Virginia law, Plaintiff has the burden of proving CSC and TWI are the Chinese companies' alter egos. *See Eure v. Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 669 (Va. 2002). Plaintiff must show that CSC and TWI controlled the Chinese companies in a way perpetuating fraud or injustice on the Plaintiff. *Beale v. Kappa Alpha Order*, 64 S.E.2d 789, 797–98 (Va. 1951). "The separate corporate entities of corporations will be observed by the courts unless a corporation is shown to be the 'adjunct, creature, instrumentality, device, stooge, or dummy of another corporation.'" *Eure*, 561 S.E.2d at 669 (quoting *Beale*, 64 S.E.2d at 798). Due to the low pleading requirement for a meritorious defense, *e.g.*, *Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Cor.*, 812 F. Supp. 2d 710, 724 (E.D. Va. 2011), the Court finds that this factor weighs in favor of vacating default.

2. <u>Whether Movant Acted with Reasonable Promptness</u>

When deciding whether a defendant acted in a reasonably prompt manner when moving to set aside a default, courts must consider the "facts and circumstances of each occasion." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) (explaining the standard in the context of a Rule 60(b) motion).

---

[1] The Answer asserted that "the domestic entities did not have commonality of ownership, had different management structures, and did not control the activities and business purposes of the foreign defendants such that the Court could conclude that the defendants were the alter ego of each other, and disregard the separate legal and corporate identities of each defendant." Dkt. 46 ¶ 23.

CSC and TWI filed an Opposition to Plaintiff's Motion for Default, and a Motion for an Extension of Time to File an Answer, on November 3, 2022, Dkt. 41, after receiving notice of Plaintiff's Motion for Default on October 31, 2022. Dkt. 40. On December 8, 2022, CSC and TWI filed an Answer to the Complaint, Dkt. 46. On December 16, 2022, the Court entered default. Dkt. 47. And on December 28, 2022, Defendants filed a motion for reconsideration. Dkt. 48.

The Fourth Circuit and courts within the Circuit have previously held that a defendant acted reasonably promptly when filing a motion to vacate a default after a longer delay than here. *Parks v. Discount Box and Pallet, Inc.*, No. 5:12-cv-081, 2013 WL 662951, at *6 (W.D. Va. Feb. 22, 2013) (citing *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 952–54 (4th Cir. 1987) (moving party delayed ten months before filing motion to set aside default); *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009) (moving party did not act for more than two months after default was entered but responded to motion for entry of default judgment within a few weeks); *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 717 (D. Md. 2001) (moving party did not move to vacate default until over a month after default was entered)). As Defendants filed their Opposition to Plaintiff's Motion for Default, and a Motion for an Extension of Time to File an Answer only four days after learning of the motion for default and filed their motion to vacate twelve days after the Court entered default, the reasonable promptness factor weighs in favor of setting aside the default.

3. Personal Responsibility of Defaulting Party

This factor typically considers "whether the default was primarily traceable to the defendant's actions or oversight by their counsel." *Goldbelt Wolf, LLC v. Operational Wear Armor, LLC*, No. 1:15-cv-1268, 2016 WL 726532, at *6 (W.D. Va. Feb. 22, 2016). Here, there is no indication that CSC or TWI bear personal responsibility for failing to file a responsive pleading

7

within fourteen days of the Court's Order dismissing the motion to dismiss. Plaintiff argues that "Defense counsel's mistake does not excuse their party from their mistake at the expense of Plaintiff, who has followed the Rules of Procedure." Dkt. 49 at 8. But in light of the Fourth Circuit's "strong preference that, as a general matter, defaults be avoided," *Colleton Preparatory Acad'y, Inc.*, 616 F.3d at 417, this factor, without any sign of Defendants failing to take personal responsibility, weighs in favor of vacating default.

4. Prejudice to the Party

The Court next considers whether Plaintiff would suffer prejudice if the Court vacated entry of default. *See id.* at 419 ("the issue is one of *prejudice to the adversary*, not merely the existence of delay"). The Court finds this factor also weighs in favor of vacating entry of default.

"In the context of a motion to set aside an entry of default . . . delay in and of itself does not constitute prejudice to the opposing party." *Id.* at 418 (internal reference omitted). The Plaintiff is already familiar with the facts and likely defenses in the case. The record does not indicate any particular prejudice to the Plaintiff if default is set aside, just the existence of delay.

5. History of Dilatory Action

"Courts often look to whether there are other instances of dilatory action on the part of the defaulting party as a factor to determine whether setting aside entry of default is warranted." *Pinpoint IT Servs.*, 812 F. Supp. 2d at 727 (citing *Colleton*, 616 F.3d at 418). There is no evidence of a history of dilatory action, and this factor thus weighs in favor of vacating default.

6. Availability of Sanctions Less Drastic

As to the last factor, there are sanctions less drastic than entering default. In vacating entry of default or default judgment, the Court may "impose other sanctions against the offending attorney, such as awarding the non-movant's costs and attorney's fees." *Augusta Fiberglass*, 843

8

F.2d at 811 (so holding with respect to vacating default judgment); *see also Saunders v. Metro. Prop. Mgmt., Inc.*, 806 F. App'x 165, 168 (4th Cir. 2020) (unpublished) (affirming district court's decision to set aside entry of default while awarding plaintiff's attorney's fees). Accordingly, since the other factors weigh in favor of vacating default, the Court finds that imposing attorney's fees and costs Plaintiff incurred in seeking to obtain and retain its default is an appropriate and warranted sanction, less drastic than default itself.

## Conclusion

"[T]he law disfavors disposition by default and accords preference to resolving a case on its merits." *Saunders*, 2020 WL 1313346, at *3 (citations omitted). As the Court finds that the considered factors weigh in favor of setting aside the default, the Court will grant Defendants' motion to vacate entry of default. However, the Court will also order Defendants to reimburse Plaintiff for attorney's fees and costs incurred by counsel in pursuing the motion for default. Plaintiff's motion for default judgment will be denied.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this __10th__ day of February, 2023.

*[Signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE